# In the United States Court of Federal Claims

No. 25–1067
(Filed: May 13, 2026)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SI WIRELESS, LLC,

       *Plaintiff,*

v.

THE UNITED STATES,

       *Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Tony S. Lee*, *James U. Troup*, Fletcher, Heald & Hildreth, Arlington, VA. for plaintiff.

    *Anna Bondurant Eley*, Senior Litigation Counsel, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC for the defendant, with whom were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Eric P. Bruskin*, Assistant Director.

## OPINION

*Bruggink*, Judge

    Pending in this Tucker Act suit seeking compensation pursuant to the Secured Network Act ("SNA") is defendant's motion to dismiss. It is brought under Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6). The matter is fully briefed, and oral argument was heard on December 18, 2025. Because Tucker Act jurisdiction has been displaced, we grant defendant's motion.

## BACKGROUND[1]

---

[1] These facts are drawn from the complaint and the attachments thereto unless otherwise indicated, as well as from materials attached to the motion to

SI Wireless LLC ("SI") provided advanced communication services in Tennessee and Kentucky. Plaintiff alleges that it is entitled to compensation pursuant to the Secured Network Act ("SNA"),[2] which Congress enacted in 2020 to eliminate American reliance on communications technology manufactured by Chinese companies such as Huawei. SI offers two theories under which it is entitled to recover. First, SI alleges it contracted with the Federal Communications Commission ("FCC" or "Commission") to replace cellular devices under the provisions of the SNA and that the FCC breached that contract by not paying to replace plaintiff's equipment. Its second theory is that the SNA directly establishes the basis for a statutory claim for compensation by mandating funds be paid to plaintiff for that same destroyed equipment.

With the SNA, Congress created a reimbursement program, administered by the FCC, to compensate cell phone carriers that replace Huawei network hardware potentially compromised by the Chinese Communist Party. *See* 47 U.S.C. § 1603(a) (defining "covered hardware" as that described in FCC Report 34 FCC Rcd. 11423 (Nov. 26, 2019)). The Commission was directed to "make reasonable efforts to ensure that reimbursement funds are distributed equally among all applicants." *Id.* at § 1603(d)(5)(A). Reimbursement was afforded only to companies that met three criteria. The first was those applicants had to be companies that serve "10,000,000 or fewer customers." 47 U.S.C. § 1603(b)(1). Second, applicants were required to submit "a plan for the permanent removal, replacement, and disposal of" equipment from a pre-approved list. *Id.* at § 1603(d)(4). Third, they had to provide a "timeline for the permanent removal, replacement, and disposal of" the identified equipment. *Id.*

The complaint alleges that in 2020 and 2021 FCC officials directed telecommunications providers such as SI to remove high-risk equipment from their networks and in turn that providers were promised reimbursement under the SNA. Before those actions, 30,000 customers used SI's network and without the income from those customers, plaintiff alleges that it could not finance the network rebuild. On May 25, 2022, SI signed and filed the 5640 form required to receive reimbursement under the SNA. The FCC validated the form later that year and approved reimbursements to SI for the completed work. By then, plaintiff had dismantled the bulk of its network–

---

dismiss. These facts are undisputed unless otherwise specified.

[2] Pub. L. No. 116-124, § 2, 134 Stat. 158 (codified at 47 U.S.C. §1601 et. seq.).

including 204 cell sites and two switches—removing Huawei devices.

In 2024, the *Washington Post* published an article quoting SI's President, Leslie Williams, that attracted the FCC's attention. *See* App. to Def. Mot. Dis. at 308–309. Williams stated that "his network had been down since 2022." *Id.* This statement prompted questions regarding SI's eligibility for reimbursement based on the commission's reading of the statute that applicants needed to be current providers of service. In July of 2024, the FCC suspended payments until an investigation could establish SI's eligibility.

Frustrated with the lack of resolution from the investigation, on April 17, 2025, SI filed a mandamus petition at the D.C. Circuit seeking to compel the FCC to determine whether SI was eligible for reimbursement. Def. Mot. To Dis. App. A1 (Pl. Pet., *In re: SI Wireless, LLC.*, No. 25-CV-1112 (D.C. Cir. April 17, 2025) ("Mand. Pet.")). It brought its action under the All Writs and Administrative Procedure Acts, alleging retaliation and unreasonable delay. *Id.* at 29–30. On June 26, 2025, not having received a ruling from the D.C. Circuit, SI filed suit here. On October 1, 2025, the D.C. Circuit denied SI's mandamus petition, finding that SI had not established the absence of adequate relief available elsewhere. *In re: SI Wireless, LLC*, No. 25-1112, slip op. at 1 (D.C. Cir. October 1, 2025) (per curiam).  This lawsuit followed.

## DISCUSSION

Plaintiff asserts that it is owed money either as a result of the FCC's promise to pay it in exchange for the removal of the covered equipment, a contractual theory, or as directly mandated by the SNA itself. As to the latter, SI contends the SNA requires payments because Congress directed that "the Commission *shall* establish a reimbursement program." 47 U.S.C. § 1603(a) (emphasis added); *see also id.* § (d)(5)(A) (the Commission "shall make reasonable efforts to ensure that reimbursement funds are distributed equally among all applicants"). SI argues that it fulfilled the statute's three reimbursement requirements: (1) have 10,000,000 or fewer customers; (2) submit a plan to remove pre-approved equipment; and (3) propose a timeline for that removal. The first requirement was met because SI served approximately 30,000 customers on May 25, 2022, when it signed the Form 5640. SI contends it met the plan and timeline requirements when it provided the FCC with a detailed timeline and equipment replacement plan. At the time SI filed suit, defendant had reimbursed less than $25 million of $181 million purportedly promised. This represents approximately 13.5% of the promised reimbursement.  SI alleges the FCC reimbursed most companies in the program significantly more than 13.5%. Therefore, plaintiff contends reasonable efforts were not made to distribute reimbursement funds equally.

Because it fulfilled all three SNA eligibility requirements and the statute is money-mandating, SI argues the court has jurisdiction over the claim under the Tucker Act. As to its contract theory, plaintiff contends that the statute and implementing regulations constitute an offer which SI accepted by removing Huawei hardware and completing Form 5640.

Defendant moves to dismiss because the court lacks jurisdiction over either claim for four reasons: 1) under 28 U.S.C. § 2341(1) the courts of appeal have "exclusive jurisdiction" over actions to enforce the SNA; 2) SI's petition was pending in the D.C. Circuit Court of Appeals when the complaint here was filed, and thus jurisdiction here is barred by operation of 28 U.S.C. § 1500; 3) the claims are not ripe because the FCC has not made a final decision on plaintiff's reimbursement eligibility; and 4) plaintiff failed to exhaust its statutory administrative remedies.

Defendant also moves under 12(b)(6) to dismiss the contract claim because it fails to state a cause of action due to the lack of assent by the government. Because we conclude below that the court lacks jurisdiction over either claim under both of the first two arguments above, it is unnecessary to consider the alternative bases for dismissal.

I.      Displacement of the Tucker Act Remedy

We begin by analyzing the proper forum for judicial review. The Tucker Act grants this court jurisdiction "to render judgment upon any claim against the United States founded either upon . . . any Act of Congress . . . or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Plaintiff contends that it offers both a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under a "money-mandating" source of law (the SNA), *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008), and that it has sufficiently pled the existence of a valid contract with the FCC. *See Total Med. Mgmt. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir.1997). Either would normally be enough to establish subject matter jurisdiction under the Tucker Act. Defendant argues, however, that the court's jurisdiction is displaced because the SNA creates a specific alternative and exclusive review scheme in a different court. A review of the statutory framework in which the SNA was inserted is necessary.

The SNA's program for compensating cellular providers for replacing compromised equipment was incorporated into an existing multi-layered statutory framework, anchored by the Communications Act of 1934, 47 U.S.C. § 151 et seq. The statute requires the FCC to enforce the SNA "with

the same jurisdiction . . . as though all applicable terms and provisions of the Communications Act . . . were incorporated." 47 U.S.C. § 1606. Section 402(a) of the Communications Act provides that "any proceeding to enjoin, set aside, annul, or suspend any order of the Commission . . . shall be brought" under section 2342 of the Hobbs Act. 47 U.S.C. § 402(a).[3] The Hobbs Act, in turn, gives "the court of appeals . . . exclusive jurisdiction to enjoin, set aside, suspend . . . or to determine the validity of . . . all final orders of the Federal Communications Commission." 28 U.S.C. § 2342(1). In short, the SNA directs that the FCC's actions pursuant to it are governed by the Communications Act, and the Communications Act requires that the FCC's actions may only be challenged via the Hobbs Act. *See* 28 U.S.C. § 2342(1). Section 2342 provides for judicial review of final FCC actions only in the United States Circuit Courts of Appeal.[4] Following that line of analysis leads defendant to the conclusion that plaintiff's suit is miscast as one for damages under the Tucker Act; in reality, it is a collateral attempt to avoid the D.C. Circuit's jurisdiction, where it has already been told to abide the outcome of the FCC's investigation. *In re: SI Wireless, LLC*, No. 25-1112, slip op. at 1 (D.C. Cir. October 1, 2025) (per curiam).

A.     Interplay Between Communication and Tucker Acts

A determination of withdrawal or displacement of jurisdiction requires "an unambiguous [Congressional] intention to withdraw the Tucker Act remedy." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019 (1984). This intent exists where Congress provides a "precisely drawn, detailed statute" that "contains its own judicial remedies." *United States v. Bormes*, 568 U.S. 6, 12–13 (2012) (internal citation omitted). That "specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute . . . [because a] self-executing remedial scheme supersedes the gap-filling role of the Tucker Act." *Id.*

---

[3] The Communications Act was amended in 1996 by the Telecommunications Act of 1996. Pub. L. No. 104-104, 110 Stat. 56. Plaintiff cites section 601(c)(1) which states "this Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." *Id.* As we explain below, plaintiff misconstrues the amendment.

[4] Other provisions of the Communications Act provide for review in other fora, such as enforcement actions in district court and certain appeals of agency action under section 402(b) are exclusively within the purview of the D.C. Circuit. 47 U.S.C. § 402(b).

Defendant believes the placement of the SNA within the Communications Act review scheme operates as a clear and unambiguous displacement of the Tucker Act. It cites four primary cases in support. They are *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1364 (Fed. Cir. 2021) (holding the Communication Act "displaces Tucker Act jurisdiction for FCC orders and decisions"); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086 (Fed. Cir. 2018) (Tucker Act jurisdiction over "contract claims was displaced by the . . . Communications Act"); *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375 (Fed. Cir. 2009) (holding the Communication Act displaces the Tucker Act and vests "exclusive jurisdiction" in the D.C. Circuit under section 402(b)); and *Folden v. United States*, 379 F.3d 1344 (Fed. Cir. 2004) (holding that this court's "Tucker Act Jurisdiction . . . is preempted" by the Communications Act). Given these precedents, the government argues that the question is foreclosed and plaintiff's only remedy is before the FCC directly and then the D.C. Circuit if necessary.

Plaintiff has an entirely different view. It argues that the SNA and Communications Act are silent as to the Tucker Act and its monetary remedies, and therefore there is no unambiguous expression of congressional intent to divest this court of jurisdiction to hear cases involving the SNA. Plaintiff also makes a textual argument based on the Communications Act and a subsequent amendment to that act, the Telecommunications Act. Plaintiff contends those provisions show that monetary relief is not displaced by the Communications Act and this court has concurrent jurisdiction. In other words, declaratory relief *vis-à-vis* the FCC's orders can be sought in the circuit courts while monetary relief remains available from this court. SI relies primarily on the D.C. Circuit's decision in *Northpoint Tech., Ltd. v. FCC*, 414 F.3d 61 (D.C. Cir. 2005), and the Supreme Court's more recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).

We believe, as defendant does, that the issue has been resolved by the Federal Circuit in a conclusive manner and that the Supreme Court has not spoken otherwise. We begin with the first pronouncement from the Circuit in the *Folden* case cited above: that "Tucker Act Jurisdiction . . . is preempted" by the Communications Act. 379 F.3d at 1357. There, the Federal Circuit dealt with an appeal from this court in which we found an absence of jurisdiction to hear a suit for damages stemming from the Commission's failure to carry out a cellular provider license lottery. *Id.* Both courts held that the review scheme outlined in the Communications Act mandated that the FCC's decision on a communications license, even if

6

nominally a suit for monetary relief, belonged only in the D.C. Circuit per 47 U.S.C. § 402(b).  *Id.* at 1357–63.

Although the suit at bar is subject to section 402(a), which expands the possible venues for review of other FCC orders to nearly all federal circuit courts, the reasoning of *Folden* is equally applicable. The Federal Circuit, like this court, viewed the gravamen of the complaint to be a challenge to the actions taken by the FCC about an application for a particular benefit. The benefit there was a license to provide cellular service. The contractual breach alleged was a failure to hold a lottery for that benefit. The statutory violation alleged was the same. The Commission's decisions regarding licensure, however, was, as the court held, reviewable only in the D.C. Circuit per section 402(b).

This case mirrors *Folden* in that the contractual and statutory claims cover the same agency action that is otherwise reviewable only in the circuit courts, per the Communications Act's mandate. Here, the breach/violation alleged is the FCC's failure to pay out a benefit under the SNA, which is enforced by the FCC per the terms of the Communications Act. Section 402(a), applicable to "any proceeding to enjoin, set aside, annul, or suspend any order of the Commission," requires that such an action "be brought as provided by and in the manner prescribed in chapter 158 of title 28." 47 U.S.C. § 402(a). As noted above, that section directs that such suits be brought in the federal circuit courts. 28 U.S.C. § 2342(1) (listing the circuit courts' jurisdiction as including the review of "all final orders of the Federal Communication Commission made reviewable by [42 U.S.C. § 402(a)]"). SI asks us to decide whether money is owed it under the SNA under either the terms of the statute itself or an implied contract. But that is precisely the question that FCC is tasked with deciding and is actually deciding in the current investigation of plaintiff.  Review of such a decision is, as held in *Folden*, expressly reserved for other courts under the Communications Act.

The interlocutory timing of plaintiff's complaint here does not change the analysis.  The FCC's action on SI's application for compensation under the act is not final. The D.C. Circuit retains sole jurisdiction over the FCC's action or inaction in SI's matter. "By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Telecomm. Res. and Action Center v. F.C.C.*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("TRAC"). In other words, when Congress gave exclusive jurisdiction over the FCC's final decisions to the federal circuit courts, it also gave them sole authority over non-final decisions. This is because "any suit seeking relief that might affect the Circuit Court's future

jurisdiction is subject to the exclusive review of the Court of Appeals." *Id.* at 75. The Federal Circuit agreed with this analysis in the patent context, but it is equally applicable here. *See Hyatt v United States Patent & Trademark Office*, 904 F3d 1361 (Fed. Cir. 2018). The TRAC "rule applies to cases concerning interlocutory challenges to agency proceedings that will culminate in final agency actions exclusively reviewable by certain courts. In those cases, the court with jurisdiction over the final agency action *also has exclusive jurisdiction over the interlocutory challenges* in order to 'protect its future jurisdiction.'" *Id.* at 1369 (emphasis added) (quoting *TRAC*, 750 F.2d at 75); *see also Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375 (Fed. Cir. 2021) (adopting the "TRAC rubric" [ t]o protect our future jurisdiction"). Thus, although the FCC's order is not final, this does not create an avenue for Tucker Act jurisdiction to attach.

The same result applies with respect to *Biltmore Forest Broadcasting FM, Inc. v. United States*, where the Federal Circuit reiterated that any suit challenging a licensing decision was subject to the review mandated by Section 402(b), namely, in the D.C. Circuit. 555 F.3d at 1383–84. The only wrinkle in that case was that the plaintiff there had gone first to the D.C. Circuit and, having no success there, tried an implied contract theory in this court, arguing that the *Folden* decision did not mandate the same result because the merits of the contract theory were not reached by the Circuit and because, unlike the *Folden* plaintiff, Biltmore had exhausted its remedies by seeking review of the FCC's order at the D.C. Circuit Court of Appeals. *Id.* at 1383–84. These distinctions were of no moment to the Federal Circuit, however, because, as it explained in *Folden*, the D.C. Circuit's jurisdiction is exclusive. *Id.* at 1384. We find section 402(a) equally exclusive.

The next relevant case is *Alpine PCS, Inc.*, in which the Federal Circuit was again confronted with a question of whether section 402(b) applied, and it again answered in the affirmative. 878 F.3d at 1094–95. In *Alpine*, the plaintiff was again a communications license holder whose license was cancelled by the FCC for nonpayment of fees. *Id.* at 1090. Plaintiff viewed that cancellation as a breach of contract and a taking of its property rights in the license. It thus brought suit in this court, which was dismissed for lack of jurisdiction, and an appeal was taken to the Federal Circuit. The circuit followed *Folden* and *Biltmore*, holding that this court's contract and takings jurisdiction was displaced by 47 U.S.C. § 402(b). *Id.* at 1094–98. The court dealt with Alpine's argument that the relief for a constitutional cause of action (a taking) was outside of the scope of the relief provided for by the statute, meaning that Tucker Act jurisdiction could not have been displaced for Takings Clause cases. It found no such exception

because the comprehensive review scheme did not foreclose an allegation of a taking to either the FCC or the D.C. Circuit. *Id.* at 1097–98. It was also not problematic that money damages, either in contract or for just compensation, would not be the direct result of a suit under section 402(b). *Id.* at 1094–95 (contract); 1095–98 (taking). Because those theories could be valid bases for relief under the Communications Act, the Tucker Act is no longer necessary to fill the gap and provide a forum for monetary relief. *Id.*[5]

Finally, the Federal Circuit's decision in *Sandwich Isles Communications, Inc.*, deals with section 402(a), the relevant provision here. The plaintiff in that case sought "just compensation" under the Fifth Amendment's Takings Clause after the FCC denied it further funding via two programs it administered to support rural communications providers. The Federal Circuit held that *Folden*, *Biltmore*, and *Alpine PCS* dictated the same result—the comprehensive review scheme imposed by the Communications Act obviated the need for and displaced the Tucker Act. 992 F.3d at 1363-65. As the Circuit recognized, the Supreme Court had already had an opportunity to speak to whether section 402(a)'s judicial remedy was exclusive. *Id.* at 1362 (citing *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463 (1984)). As in *Alpine PCS*, the fact that plaintiff alleged a taking in this court did not change the nature of the suit as one challenging the propriety of an FCC order. *Sandwich Isles Comm'cns*, 992 F.3d at 1364–65.[6]

_____

[5] Earlier in its opinion, citing *United States v. Bormes*, 568 U.S. 6 (2012), the Circuit noted the "gap-filling" nature of Tucker Act jurisdiction. *Alpine PCS, Inc.*, 878 F.3d at 1092. When government obligations can be enforced elsewhere, and are in fact directed by statute to be enforced elsewhere, the Tucker Act's jurisdiction is displaced. *Id.*

[6] Recently, the Federal Circuit clarified that not all takings claims regarding FCC-granted licenses implicate the Communication's Act. *Ligado Networks LLC v. United States*, 2026 WL 653982 (Fed. Cir. 2026). The plaintiff in *Ligado*, a wireless services provider, received a license from the FCC despite concerns from other agencies, notably the Department of War ("DOW"). *Id.* at *1. Because of those apprehensions, the provider's license was conditional on coordinating with the DOW to mitigate GPS interference. *Id.* Plaintiff sued here alleging a taking because the DOW had not permitted plaintiff to launch its services. *Id.* at *2. This court held, and the Federal Circuit affirmed, that the Tucker Act was not displaced by the Communications Act's review scheme. *Id.* at *3. Displacement was unwarranted because plaintiff was "not challenging any Commission action." *Id.* It was broader government action alleged to have taken the property right. Therefore, *Alpine PCS* and *Sandwich Isles* were not implicated.

*Sandwich Isles* controls the outcome of this case. The Federal Circuit made explicit that section 402(a) provides the exclusive path of judicial review for all FCC actions not otherwise challengeable under section 402(b). The SNA's incorporation of the Communications Act is fatal to plaintiff's suit here. Just as in each of the four cases discussed above, the point of plaintiff's suit is to challenge FCC action or inaction. Here, it is the FCC's decision to stop payment of funds under the SNA. Like the cases discussed above, the contractual theory pled here does not change the result. Congress has control of the federal courts' jurisdiction, other than in limited circumstances prescribed by the Constitution, and it has done so here by making exclusive the jurisdiction of the circuit courts to hear challenges to FCC agency action taken pursuant to any aspect of the Communications Act.[7]

### B.    Plaintiff's Statutory and Precedential Objections

SI cites two provisions of the Communications Act and one circuit court case and a more recent Supreme Court case to the effect that Tucker Act jurisdiction has been preserved or otherwise left undisturbed by the Communications Act.  We take the statutory arguments first and then the case law objection.

### 1.  Statutory Arguments

Plaintiff relies on the savings clause in the Communications Act to argue that the Tucker Act has not been displaced. Section 414 of the Communications Act states that "nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 ("Savings Clause") (citation modified). The Tucker Act was first enacted in 1887 – nearly five decades before the Communications Act in 1934. § 3657 Statutory Exceptions to Sovereign Immunity—Actions Under the Tucker Act, 14 Fed. Prac. & Proc. Juris. § 3657 (4th ed.). Because the Communications Act explicitly saves existing statutory remedies and the Tucker Act predated the Communications Act, SI argues the latter cannot displace the former.

The Tucker Act, however, does not itself create a remedy in the sense

---

[7] The exception being licensing decisions, as in *Folden*, review of which is further limited to the D.C. Circuit alone.

used by the savings clause of section 414. Rather, it is a waiver of sovereign immunity. Thus, the remedy, money, must be provided by a separate source of law, such a statute or regulation mandating that it be paid to the plaintiff. *See Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (requiring "a separate source of substantive law that creates the right to money damages" apart from the Tucker Act itself). The Tucker Act is described as "remedial" in the sense that it provides a judicial forum where none exists absent the waiver of sovereign immunity provided by the Tucker Act. *See, e.g.*, *Baltimore Mail S.S. Co. v. United States*, 76 F.2d 582, 584 (4th Cir. 1935) (ascribing to Justice Holmes the description of the Tucker Act as "that great remedial statute" but finding no jurisdiction under the act for an implied at law contractual theory). Moreover, no court has read the Savings Clause in the broad fashion that plaintiff now propounds.[8] Because the Tucker Act is a jurisdiction statute—a waiver of sovereign immunity—, not a grant of any particular remedy, its jurisdiction is not saved by section 414.

Plaintiff's final statutory construction argument relies on a 1996 amendment to the Communications Act, known as the "Telecommunications Act of 1996," which states, "[t]his Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly provided in such Act or amendments." Pub. L. No. 104-104, § 601(c)(1), 110 Stat. 56 (1996). The 1996 amendment cannot save jurisdiction in this court, however, because that clause is only describing the scope of that particular amendment, as grafted into a larger piece of legislation. It certainly does not purport to fundamentally change the comprehensive remedial scheme of the Communications Act described above or in any way broaden the savings clause of section 414. It is inapposite to the question of displacement of the Tucker Act.

---

[8] Plaintiff's argument appears to be novel: the Federal Circuit was not asked to rule on the applicability of the Savings Clause in *Alpine PCS*, *Biltmore*, *Folden*, or *Sandwich Isles*. Appellate courts besides Federal Circuit have declined to read the Savings Clause broadly as SI requests. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir. 1998) (holding that state law contract action on a promotional sale offered by Sprint Corporation was preempted by the Communication Act's administrative and judicial review scheme); *see also Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000) (holding the Savings clause does not "abrogate the very federal regulation of mobile telephone providers that the act intended to create" (citation omitted)).

2. Case Law

Plaintiff relies primarily on two cases for its argument that we should not read the Communications Act's remedial scheme as comprehensive and displacing. The first is from the D.C. Circuit and the second from the Supreme Court. We begin with the circuit court decision. Plaintiff points to the D.C. Circuit's decision in *Northpoint Technology, Inc. v. FCC*, 414 F.3d 61 (D.C. Cir. 2005). In *Northpoint*, the circuit court was faced with an Administrative Procedures Act ("APA") challenge to FCC rulemaking. *Id.* The rule covered sharing of certain bandwidth channels between terrestrial video distribution providers and satellite video providers. *Id.* at 64. The court rejected the challenge to the rule and stated, that if Northpoint was alleging a breach of an agreement between it and the FCC, that would implicate the Tucker Act and not the APA. *Id.* at 185.

That statement, besides being unnecessary to the disposition of the case is limited to the precise context in which it was stated. The APA's presumed remedy of setting aside agency action when a violation is found, *see* 5 U.S.C. § 706(2), is limited when other adequate remedies are present at law, such as the Tucker Act. 5 U.S.C. § 704 ("Agency action made reviewable by statue and final agency action for which there is no other adequate remedy in a court are subject to judicial review"). Because the Tucker Act would provide adequate relief for a contract dispute with the government, the APA would be inapplicable in such disputes. We thus understand the D.C. Circuit's statement to be an invocation of the APA's own limiting principle regarding judicial review and not a statement regarding the Communications Act's exclusive review scheme. Section 414 does not save jurisdiction under the Tucker Act.[9]

Lastly, the Supreme Court's more recent decision in *McLaughlin Chiropractic Associates* is not to the contrary. Plaintiff argues that *McLaughlin* created a distinction between enforcement actions and

---

[9] Nor does it, as plaintiff urges, create an ambiguity through which the Tucker Act might avoid displacement. Plaintiff argues that neither the Communications nor Hobbs Acts address the question of sovereign immunity. Therefore, plaintiff argues, they do not unequivocally waive sovereign immunity and cannot displace the Tucker Act. Not so. Assuming that the SNA creates a right of recovery enforceable in this court via the Tucker Act, it is displaced if Congress unambiguously expressed an intent to divest this court of jurisdiction. As we held above, Congress unequivocally manifested such displacement through the passage of the Communication Act's comprehensive remedial scheme.

challenges to FCC action. The former are suits under the Communications Act against parties other than the FCC. The latter are squarely within the exclusive jurisdiction of the federal appeals courts as the Federal Circuit held in *Folden*, *Biltmore*, *Alpine PCS*, and *Sandwich Isles*.

In *McLaughlin*, a chiropractic association brought a class action in district court against McKesson Corporation for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, another statute grafted into the Communications Act. 606 U.S. at 149. That act provides a private right of action against marketers who send unsolicited advertisements by fax without an opt-out notice attached. 47 U.S.C. § 227(b)(1)(C), 2(D). During the pendency of that action, the FCC issued an order concerning the meaning of the term "telephone facsimile machine" contained in the act, declaring that online fax services did not fit within the meaning of the term. 606 U.S. at 150. After that order, the district court viewed itself as bound by the FCC's pronouncement and granted summary judgment against the plaintiffs. The Ninth Circuit affirmed. *Id.* at 151. The Supreme Court granted the writ of *certiorari* to decide whether the Hobbs Act, incorporated by the Communications Act and relevant here, mandated the result below. That is to say, *certiorari* was granted on whether the district court was bound by the final FCC action. *Id.*

The Court began with the Hobbs Act's grant of exclusive jurisdiction to the circuit courts to review FCC orders. The issue was thus whether the district court, in an enforcement action of a provision of the Communications Act, was bound by an FCC order interpreting that same provision. The Court began with an exercise in taxonomy by categorizing three types of pre-enforcement reviews of agency rules and orders. *Id.* at 153–54. The first consists of any statutes that authorize pre-enforcement judicial review but preclude subsequent judicial review during enforcement proceedings. *Id.* at 153. Two environmental statutes were given as examples. The second category covers the opposite scenario, in which a statute expressly authorizes both pre-enforcement judicial review and review of agency action during enforcement proceedings. *Id.* at 153. The third category is in-between the first two: the statute provides for pre-enforcement review of agency action but is silent as to the courts' ability to take up the validity of agency orders during an enforcement proceeding. *Id.* at 154. That was the scenario in *McLaughlin*.

Citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Court said that the default rule was to allow district courts to take up the issue of an agency's interpretation of a statute during an enforcement proceeding. *McLaughlin*, 606 U.S. at 155–56. Thus, if a statute does not

13

expressly preclude judicial review during enforcement proceedings, a district court may review the agency's interpretation of a statute. *Id.* The Court went on to hold that the Hobbs Act did not expressly limit a district court's review during enforcement proceedings. *Id.* at 159-62. The result then was that the district court had erred in viewing itself as bound by the FCC's interpretation of the Telephone Consumer Protection Act. *Id.* at 168.

SI casts itself in the shoes of the chiropractic association in *McLaughlin*. Its Tucker Act suit seeks to enforce the SNA against the party subject to the statutory cause of action, here the government. The conclusion for plaintiff is that this court, like the district court in *McLaughlin*, is not bound by any pronouncements of the FCC regarding the SNA. By extension, SI reasons our jurisdiction must not be precluded by section 402(a)'s invocation of the Hobbs Act. We do not so read *McLaughlin*.

We do not think this suit is an "enforcement action" as the term is used by the *McLaughlin* Court. It explained that it used the term as a shorthand for the APA's "civil or criminal proceedings for judicial enforcement." *Id.* at 153 n.1. (citing 5 U.S.C. § 703). The Court meant that the term included "both (i) enforcement actions brought by the Government and (ii) civil suits brought by private parties alleging a defendant's violation of a statute, regulation, or order. *Id.* This second type of enforcement action is represented in *Mclaughlin* where the chiropractic association sought to enforce the statutory prohibition against unsolicited fax advertisements against the party sending them. The SNA's provisions relied upon by SI are not analogous. The SNA does not create private rights of action against non-government entities. The SNA is an attempt to incentivize conduct by creating a compensation program solely administered by the FCC.

Plaintiff is neither the government nor a private party aggrieved by some third-party violation of statutory proscriptions. Unlike *McLaughlin*, SI has no private cause of action created by the act against a true third-party violator of the act. In such a case, the trial court would necessarily be called upon to determine the parties' standing under or rights *vis-à-vis* the statute in question. The Supreme Court applied *Loper Bright* to mean that, unless expressly prohibited, the courts' purview in such a case would include the interpretation of the statute alleged to have been violated by the third party. *Id.* at 157–58.[10] This holding is inapplicable here because plaintiff is not an

---

[10] On February 27, 2026, plaintiff filed supplemental authority expanding on its interpretation of *McLaughlin*. *Astro Companies, LLC v. WestFax Inc.*, 2026 WL 346180 (D. Colo. 2026) (holding that the district court was not bound by the agency decision and thus had jurisdiction); *Alvarez v. Fiesta*

enforcer of a private right of action against a third-party violator of the SNA. It is the FCC that is tasked with taking agency action to distribute the program's funds to eligible providers. Plaintiff alleges that it is such a provider. It is perturbed by the lack of payments received from the FCC. Per the terms of the SNA, it will have to seek a determination by the agency, as it has done. If SI is unsuccessful, then it may seek review in the exclusive forum vested with jurisdiction to hear that challenge: the circuit courts.[11]

In sum, this court does not have subject-matter jurisdiction because the Communications Act is a comprehensive remedial framework that displaces Tucker Act review. *Sandwich Isles Comm'cns*, 992 F.3d at 1363–65. Plaintiff's attempt to shoehorn itself into the position of an enforcement action plaintiff like that in *McLaughlin* is an attempt to fit a square peg into a round hole. Congress has spoken regarding any challenge to the FCC's orders and actions under the SNA, and it has spoken conclusively and unambiguously. As in *Alpine PCS* and *Sandwich Isles Communications*, plaintiff's suit is a challenge to the agency's determination of its eligibility for compensation under the act, which is reserved for the FCC and the circuit courts.

II. Section 1500 Precludes Jurisdiction

There is an independent and equally conclusive problem with jurisdiction in this court: 28 U.S.C. § 1500. Section 1500 divests this court of jurisdiction when there is an (1) "an earlier-filed suit" that is (2) "based on

---

*Nissan, Inc.*, 2026 WL 202930 (S.D. Tex. 2026) (reading *McLaughlin* to permit statutory interpretation instead of *Chevron* deference); *Loudermilk v. Maelys Cosmetics USA, Inc.*, 2025 WL 3625779 (N.D. Ga. 2025) (holding the same); *TowerNorth Development, LLC v. City of Geneva, Illinois*, 2025 WL 2767029 (N.D. Ill. 2025) (holding the same). As discussed above, this is not an enforcement action and thus *McLaughlin* and its progeny are inapposite.

[11] Our holding will not strip plaintiff of a monetary remedy. The result of a favorable FCC determination or a successful challenge in the Circuit court would be a declaration of plaintiff's rights under the SNA, which, if appropriate, will include its right to sums appropriated for compensation of rural cell service providers who remove the affected equipment. *C.f. Bowen v. Massachusetts*, 487 U.S. 879, 907 (rejecting the argument that an APA challenge was unavailable because monetary relief was available pursuant to the Tucker Act, noting that the plaintiff could not receive prospective relief under the Tucker Act for future payments).

substantially the same operative facts as the Claims Court suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)(quotation omitted). The "relief sought in each suit" has no bearing on the second element. *Acetris Health, LLC v. United States*, 949 F.3d 719, 728 (Fed. Cir. 2020) (citing *Tohono O'Odham*).

Here, the first condition for dismissal was triggered when SI filed its mandamus petition on April 17, 2025, over two months before it filed its complaint here. Although, the mandamus petition is no longer pending, *In re: SI Wireless, LLC*, No. 25-1112, slip op. at 1 (D.C. Cir. October 1, 2025), the pertinent question is whether it was pending when plaintiff filed here. *See Brandt v. United States*, 710 F.3d 1369, 1375 (Fed. Cir. 2013). It was.

SI disagrees, however, by arguing that the D.C. Circuit does not have jurisdiction over money-mandating or contract claims. *See Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 822 (D.C. Cir. 2025) (holding this court has "exclusive jurisdiction because the remedy [sought] is contractual").[12] Plaintiff reasons that, if the other court lacks jurisdiction, a claim cannot be considered pending. *See Acetris*, 949 F.3d at 729 (The Court of International Trade lacked "colorable jurisdiction to review the merits" of an agency decision and thus its decision did "not have preclusive effect under section 1500"). While the D.C. Circuit may not have jurisdiction over the case plaintiff brings here, that is not the proper question. The question is whether the D.C. Circuit had jurisdiction to hear the "pending" case in front of it—a mandamus petition. The D.C. Circuit possessed jurisdiction over that matter. *See, e.g., In re Tennant*, 359 F.3d 523, 531 (D.C. Cir. 2004) (explaining that mandamus jurisdiction lies with the court that has the ultimate decision to review a decision). Clearly the D.C. Circuit had jurisdiction to consider the mandamus request although it dismissed the petition because the matter was still pending at the FCC. *In re: SI Wireless, LLC*, No. 25-1112, slip op. at 1 (D.C. Cir. October 1, 2025) (per curiam). The first prong of section 1500 is met.

Next, SI contends section 1500 is also inapplicable because the mandamus petition seeks different relief and alleges different facts than SI does here. As stated above, however, the difference in potential relief is irrelevant for section 1500 purposes. Plaintiff argues that the operative facts are substantially different because the grounds for review are not the same. Here, SI lodges its complaint under the SNA, Compl. ¶ 3, while in the D.C. Circuit, it does so under the All Writs and Administrative Procedure Acts.

---

[12] Reh'g en banc granted, opinion vacated, No. 25-5122, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025).

*See* Mand. Pet. at 30. The mandamus petition alleges retaliation, *id*. at 29, and unreasonable delay. *Id.* at 30. Here, SI contends the key operative fact is the FCC's non-payment—something not required for a favorable ruling for plaintiff by the D.C. Circuit.

Although there are differences between the two suits, the operative facts are the same. The FCC's freeze on reimbursement precipitated both of SI's suits. The suspension is the proximate cause for both lawsuits. Necessary facts are common to both suits. Whether or not SI met the SNA's customer requirements, submitted its equipment removal plan, and filed its timeline are all relevant to both cases. Furthermore, whether the FCC personnel made statements indicating a *quid pro quo*, confirmed SI's successful application or made initial payments are also relevant facts here and in the mandamus petition. The conclusion is thus not in doubt.  Because there was pending an earlier-filed suit based on substantially the same operative facts when plaintiff filed here, its complaint must be dismissed under section 1500.

## CONCLUSION

The SNA incorporates the Communications Act—and by extension, the Hobbs Act. The Hobbs act comes with an exclusive grant of jurisdiction to the circuit courts to review agency action. Tucker Act jurisdiction has thus been displaced. Even if it were not, another statute precludes our exercise of review, namely 28 U.S.C. § 1500, because plaintiff's mandamus petition was pending at the time it filed suit here. For these reasons, we need not reach any of the other issues presented by defendant's motion.  Accordingly, the following is ordered:

1.  Defendant's motion to dismiss for lack of jurisdiction (ECF No. 6) is granted.

2.  Plaintiff's second motion for leave to file supplemental authority (ECF No. 24) is denied as moot.

3.  The Clerk of Court is directed to dismiss the Complaint and enter judgment accordingly. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

17